Paula Faye Walker v. Tony Leo Walker















IN THE
TENTH COURT OF APPEALS
 

No. 10-03-336-CV

Â Â Â Â Â PAULA FAYE WALKER,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â TONY LEO WALKER,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 296th District Court
Collin County, Texas
Trial Court # 296-50040-03
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Paula Faye Walker appeals a divorce decree. However, she did not serve a copy of her
notice of appeal on Appellee. The Clerk of this Court notified Walker by letter dated
November 6, 2003 that the appeal may be dismissed for failure to comply with the
requirements of the Rules of Appellate Procedure if the notice of appeal was not served on
Appellee and proof of service filed with the Court within 10 days. See Tex. R. App. P.
42.3(a). Walker has not responded to this notice. Accordingly, the appeal is dismissed.


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â PER CURIAM

Before Chief Justice Gray,
Â Â Â Â Â Â Justice Vance, and
Â Â Â Â Â Â Justice Reyna
Appeal dismissed
Opinion delivered and filed January 28, 2004
[CV06]



35 (Tex. Crim. App. 2000).  In Âbrief
investigatory stops of persons or vehicles that fall short of traditional
arrest,Â Âthe Fourth Amendment is satisfied if the officerÂs action is
supported by reasonable suspicion to believe that criminal activity Âmay be
afoot.ÂÂÂ  United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting United
States v. Sokolow, 490 U.S. 1, 7 (1989)); accord Terry v. Ohio, 392 U.S. 1, 9 (1968); Balentine, 71 S.W.3d at 768.Â  

Â Â Â Â Â  Â[O]ne of the specifically established
exceptions to the requirements of both a warrant and probable cause is a search
that is conducted pursuant to consent.ÂÂ  Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); accord Laney v. State, 117 S.W.3d 854, 864 (Tex. Crim. App. 2003); see
 Georgia v. Randolph, 126 S. Ct. 1515, 1522 (2006).Â  Â[T]he State must
prove the voluntariness of a consent to search by clear and convincing
evidence.ÂÂ  State v. Ibarra, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997);
accord Paprskar v. State, 484 S.W.2d 737, 737 (Tex. Crim. App. 1972); see
Tex. Const. art. I, Â§Â 9; Tex. Code Crim. Proc. Ann. art.
38.23(a) (Vernon 2005).Â  ÂIn Texas, at least since Schneckloth v.
Bustamonte, .Â .Â . the Âtotality of the circumstancesÂ
voluntariness test has been generally employed.ÂÂ  Juarez v. State, 758
S.W.2d 772, 776 (Tex. Crim. App. 1988) (citing Schneckloth, 412 U.S. 218).

The extent of the search is limited to the scope
of the consent given, and the scope of the consent is generally defined by its
expressed object.Â  The standard for measuring the scope of consent is that of ÂobjectiveÂ
reasonablenessÂwhat the typical reasonable person would have understood by the
exchange between the officer and the individual.

Vargas v. State, 18 S.W.3d 247, 253 (Tex. App.ÂWaco 2000, pet.
refÂd) (quoting Florida v. Jimeno, 500 U.S. 248, 251 (1991) & Harris
v. State, 994 S.W.2d 927, 931 (Tex. App.ÂWaco 1999, pet. refÂd)) (internal
citations omitted). 

Â Â Â Â Â  Â[A]n investigative detention must be
temporary and last no longer than is necessary to effectuate the purpose of the
stop.ÂÂ  Florida v. Royer, 460 U.S. 491, 500 (1983); accord Kothe v.
State, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004).Â  However,

there is an additional component to a routine
traffic stopÂthe license and warrants check.Â  On a routine traffic stop, police
officers may request certain information from a driver, such as a driverÂs
license .Â .Â .Â , and may conduct a computer check on that
information.Â  It is only after this computer check is completed, and the
officer knows that this driver has a currently valid licenseÂ .Â .Â .Â ,
that the traffic-stop investigation is fully resolved.

Kothe at
63-64 (internal citation omitted).Â  ÂAn officer may request consent to search a
vehicle after the purpose of the traffic stop has been accomplished, as long as
the request is reasonable under the circumstances and the officer has not
conveyed a message that compliance with the officerÂs request is required.ÂÂ  Haas
v. State, 172 S.W.3d 42, 52 (Tex. App.ÂWaco 2005, pet. refÂd).Â  

Â Â Â Â Â  A Texas Department of Public Safety
trooper saw Perez driving a pickup truck on the interstate.Â  The trooper
believed that PerezÂs license-plate light was defective.Â  See Tex. Transp. Code Ann.
Â§Â 547.322(f) (Vernon 1999).Â  Perez pulled off the road and got out of his
truck.Â  The trooper stopped behind Perez and approached him.Â  The trooper saw that
PerezÂs license-plate light was lit, but that the license plate was bent so
that the light did not illuminate the plate, and so that the plate was
partially obscured.Â  See id. Â§Â 502.409(a) (Vernon Supp. 2006).Â 
When the trooper asked for PerezÂs driverÂs license, Perez said that he did not
have his license with him, and gave the trooper a Texas identification
certificate.Â  See id. Â§Â 521.101 (Vernon Supp. 2006).Â  When the
trooper checked the certificate, he found that Perez did not have a valid Texas driverÂs license.Â  The trooper gave Perez a written warning for the defective
license-plate light, and a citation for driving without a license.Â  See id.
Â§Â§Â 521.021, 543.005 (Vernon 1999).Â  After telling Perez how to answer on
the citation, the trooper noted that Perez appeared nervous, and asked for
consent to search the truck.Â  Perez orally consented.Â Â Â  

Â Â Â Â Â  First, Perez contends that the trooper did
not have probable cause to stop or detain Perez.Â  Perez notes that his
license-plate light merely appeared defective, but was not so.Â  When the
trooper saw Perez driving with an apparently defective license-plate light, and
with an obscured license plate, the trooper had probable cause to stop Perez.Â 
Perez also contends that the trooperÂs detention of him exceeded the scope of
any initial justification for the stop.Â  Perez concedes that the trooper Âcould
perhaps still request identification, proof of insurance, and run a warrant
check.ÂÂ  (Br. at 12.)Â  When the trooper discovered that Perez did not have a
driverÂs license with him, the trooper had probable cause to detain Perez for
investigation of driving without a license or driving with an invalid license.Â 
See Tex. Transp. Code Ann.
Â§Â 521.457(a)-(b) (Vernon Supp. 2006).Â  The trial court did not file
findings of fact.Â  The record supports the trial courtÂs implicit finding that
the trooper had probable cause to stop and detain Perez.

Â Â Â Â Â  The State contends that Perez consented to
the search.Â  Perez contends that his consent was coerced.Â  When the trooper
approached PerezÂs truck, Perez said that he needed to urinate.Â  Perez argues:
ÂAfter several minutes and several requests, the officer told Appellant that he
would allow Appellant to use the restroom while he searched the cab of the
vehicle.Â  AppellantÂs freedom to use the restroom was contingent upon
his allowing the officer to search the truckÂs cab.ÂÂ  (Br. at 17 (internal
citation omitted) (emphasis in orig.).)Â  Perez does not point to, and we do not
see, any indication that the one was conditioned on the other.Â  The trooper
tells Perez that Perez may urinate on the side of the road, and then asks Perez
for consent to search.Â  Accordingly, the record supports the trial courtÂs
implicit finding that PerezÂs consent was not coerced.

Â Â Â Â Â  Next, Perez contends that the trooper
impermissibly searched the truck twice.Â  After the trooper searched the truck
bed and cab, he asked Perez why Perez was not carrying any luggage or tools if,
as Perez said, he was traveling from South Texas to Fort Worth to do
construction work.Â  When Perez had, the trooper believed, no good explanation,
the trooper told Perez that he intended to continue his search.Â  The trooper
then searched under the hood, and found the marijuana there.Â  A typical
reasonable person would have understood PerezÂs general, unwithdrawn consent to
the search of the truck to include searching under the hood.Â  Accordingly, the
record supports the trial courtÂs implicit finding that Perez consented to the
search under the hood.[1]

Â Â Â Â Â  The trial court did not abuse its
discretion in finding by clear and convincing evidence that PerezÂs consent was
voluntary and in overruling PerezÂs motion.Â  We overrule PerezÂs issue.

Â Â Â Â Â  Having
overruled PerezÂs sole issue, we affirm.

TOM GRAY

Chief
Justice

Before Chief Justice Gray,

Â Â Â Â Â  Justice Vance, and

Â Â Â Â Â  Justice
Reyna

Affirmed

Opinion
delivered and filed August 30, 2006

Do
not publish

[CR25]

Â 









[1]Â  Perez
contends, ÂNowhere on the video tape is Perez heard to give his consent to
any further searches of his vehicle.ÂÂ  (Br. at 19.)Â  Perez does, however,
appear to give oral consent a second time before the trooper searches under the
hood.Â  Thus, the record, again, supports the trial courtÂs implicit finding
that Perez gave voluntary consent.